We're ready to begin with the first case, Dorce v. City of New York. Thank you, Your Honor. The district court's dismissal is flatly inconsistent with this court's Lusenhoff decision as to plaintiff's due process and equal protection claims, and conflicts with both the Sixth Circuit's recent decision in Freed and the district court decision in Coleman as to the takings claim. Lusenhoff did not involve a takings claim because at that time Williamson County precluded such a claim, but the Supreme Court overruled Williamson County and NIC, and now takings claims stand on equal footing to the due process and equal protection claims for which Lusenhoff upheld jurisdiction. Neither the TIA nor Rooker-Feldman applies because plaintiffs do not seek to set aside the forfeiture of their property to satisfy tax claims. As in Freed, plaintiffs do not seek to restrain collection of the tax to be able to refund the excess value. By definition, surplus value is not what is owed in taxes, but what remains after a tax debt is satisfied. Thus, plaintiff's case is about refund procedures, not collection procedures. Despite defendants' attempt to brush it aside, NIC is central here. NIC clarified that the takings clause imposes an affirmative obligation on the state to pay just compensation. The state cannot force that obligation off on the property owner by requiring him to file a claim for value in the state courts. Nelson, on which defendants rely, is like Williamson County, requiring an owner to make a claim in the state proceedings. As Freed recognized, NIC abrogated the requirement for the property owner to avail himself of state procedures before pursuing a takings claim in federal court. Rooker-Feldman is also inapposite. Plaintiffs are not parties to the NREM 53 and are not challenging its ruling. ExxonMobil limited Rooker-Feldman to cases like Rooker and Feldman, and it would be a dramatic expansion to apply the party. In Vosbrink, this court held that Rooker-Feldman did not bar damages caused by defendants' fraud in obtaining the state court judgment because plaintiff was not seeking to overturn or void the state judgment. Likewise, plaintiffs here did not seek to overturn the forfeitures or satisfaction of their tax lien. They seek only to recover the surplus value taken from them without compensation. Can I ask if you could address the question of prospective relief? As you know, plaintiffs have to show a sufficient likelihood they'll be wronged again in a similar way, and I'm having difficulty seeing how your clients can make that showing. Well, that argument depends on the fact that the procedures the city is employing are targeted especially at communities of color and at forms of ownership such as HDFCs. HDFCs exist precisely to allow lower-income working people an opportunity to establish homeownership and develop equity, and yet those are the kinds of properties against which the city is proceeding in this type of action which extinguishes surplus equity, and that's the basis for the claim of standing to seek future relief. If there's a need to amend the pleadings to add HDFCs as plaintiffs, we could do that on remand. We didn't think that was necessary. It is pled as a class action, but that's a pleading defect, if any, that could be cured on remand. Excuse me, I'm not sure I follow the logic of what you just said. The individual plaintiffs are the ones that would have to show that they are to say that the program operates with a disproportionate impact on people of color. It operates, taking it at face value, at the disadvantage of homeowners of color, and if there's no indication that these particular plaintiffs are likely to again become homeowners, isn't that what the problem is? Well, your honor, I think that the idea is that they would seek to become homeowners again. It is most likely that their ability to enter into the homeownership sphere is through HDFCs, and so that's the basis for the affirmative. Well, but even if that's true, and even if they are planning to and may at some point succeed, the fact that people of color may be more likely than other people to be subject to this program doesn't say anything about how likely anyone is to be a second time in default to the city with respect to taxes and subject to this program. Even if people of color are more white homeowners to be subject to this, for all we know, that means that the odds are strongly against anyone falling into this particular trap. Well, your honor, the cases do suggest that there's no standing if there's reason to believe the state would not continue the policy or that the policy is not a formal policy of the state, but rather individual acts of individual officers. But here we have the city reconfirming its intent to continue. No, no, no, no, but I'm sorry, but when you're when there's also a case like Lyons is not just about whether the city does or doesn't have a generalized chokehold policy. It's about whether this particular person is likely to run up against that problem again. Well, I think we could solve that by if it is a problem amending to add HDFCs as named plaintiffs. But I want to be clear that even if we did not have standing as to the forward looking relief, there is jurisdiction to decide the claims for damages as this court has held in Fossbrink and Lusitano. Right. I quite agree those are separate issues, but, you know, we have to address all of the claims that are in the case and some might go one way and some might go a different way. Yeah, I appreciate that. And we actually considered amending the complaint. But because of the breadth of the holding with respect to TIA and Rooker Feldman, we determined that that was not productive before taking an remand. If there is a problem with the standing as to the forward looking claims, we would certainly attempt to cure that by amended pleading. Thank you. We'll hear from your co-counsel. Thank you and may it please the court. Mahogany Reed of the NAACP Legal Defense and Educational Fund as amicus in support of the appellant. Throughout this litigation, the city has as unique and it is. To my knowledge, no other government program permits seizure of a person's home because the nominal municipal charge gets the seized property for free to a private third party and provides no administrative mechanism for the remitted of any substantial excess equity built into the transfer of property. The program, which has operated primarily in the city's majority minority boroughs, has disproportionately downgraded Black and Latinx people's homeowner status to renter status. That the city purports to deploy the TPP for laudable public policy goals is at odds with the wealth stripping effect the program has on Black and Latinx homeowners. And the city's claim that the program advances tax collection efforts is undercut by the fact that many former homeowners, including named plaintiff Mr. Dorsey, were actively paying the outstanding debt burdening their properties before and after the foreclosure judgment on threatened traditional notions of private property homeownership and the constitutional claims formed from the city's abuses deserve a federal court forum for the reasons cited by plaintiff's counsel in their oral presentation and in their briefing. I'd like to emphasize two additional reasons why the plaintiff's claims are ill-suited for dismissal under the TIA. First, we know from Hibbs v. Winn that the act was passed for the discrete purpose of requiring taxpayer plaintiffs to challenge tax assessments or collections under the government's refund mechanism. But the plaintiffs in this case don't challenge the debt success on their property or otherwise seek a refund or to redeem their property. Like the plaintiffs in Freed and Coleman, they only seek to recover the excess value of their property after satisfaction of their debt and assert claims that go to the heart of their ability to maintain equal and wealth opportunities with their white counterparts, which has been the subject of civil rights lawsuits in federal court for decades. Second, I want to emphasize that the city does not generate any tax revenue or acquire property under the CCC program in satisfaction of a plaintiff's debt. And the district court's conclusion that this fact lacks legal significance, I believe, was error. Both the definitions of levy and collection under the act contemplate the district court nor the city site to a federal court case in which the court applied either the TIA or comity to block a scheme where the government did not raise any tax revenue or gather properties directly. And the court should not do so here. If there are no questions, thank you. Thank you very much. We'll hear from the appellee. Ms. West. Good afternoon, Your Honor. May it please the court. I'm Melanie West for the Municipal Appellees. Before I start, I'd just like to note that the appellees last week requested a reallocation of our time, asking for seven minutes for the city and three minutes for the third party transfer defendants and the calendar clerk suggested that we check in with the panel about that. Yes, that's fine. And we'll give you two minutes to start. Thank you, Your Honor. I'd like to first focus on the issue of the tax injunction, which the district court correctly found bars the majority of the plaintiff's claims here. This case falls in the traditional heartland of TIA cases. It is an effort expressly aimed at preventing the city from collecting local taxes. Why is this tax collection? The TPP program is within the definition of tax collection for three reasons. The first is that it does indeed result in the collection of tax revenue. It motivates delinquent taxpayers to pay their taxes and it results in payments by a significant number of owners. For example, in the 2015 in rent foreclosure action, which is one of the two at issue here, something like 60% of owners came forward and paid their unpaid taxes. So the program does generate tax revenue. And secondly, it collects property in satisfaction of tax debt. Supreme Court held in Brawl and as this court has held in Wells, collection of property is also a form of tax collection under the meaning of the TIA. And the method of collection of property here is one that was reached after a legislative judgment that the sale or liquidation of properties was not workable. As our brief explains, when the city initially expeditiously auctioned off properties upon foreclosure, it found those properties once again tax delinquent within short periods of time. The city then began to hold on to the property and maintain and manage them as affordable housing. That led to the city becoming a longstanding, the largest landlord in the city and costing the city billions of dollars in maintenance. Well, excuse me, Ms. West, but let's accept what you're saying at face value for the moment. But what the plaintiffs are challenging, they say, is not the foreclosure process, not the effort to collect taxes by seizing the property. They're challenging what comes after. So how is it a violation of the Tax Injunction Act or the ability to seize a property that may have equity of $50,000 in order to collect a tax liability of $5,000 without returning the excess value that's been seized to the homeowner? So a couple of things, Your Honor. The first thing that I'll say is that it's not really accurate that the claims here involve only the surplus value. Before you go further with that, let me just raise an aspect of that. I thought that too, except that it sounded to me as if Plaintiffs' Counsel expressly disavowed any other claim just a few minutes ago. Well, Your Honor, I'll just point to the complaints and the briefs that challenge everything from the notice provisions to the properties included to the deed transfer. So that's every aspect of the TPP program. And the relief thought is enjoyment of the entire TPP program. Well, excuse me. Again, I appreciate that point. And let's assume for the sake of this question that you are correct that the plaintiffs have not fully disavowed those other aspects of what they're asking for. And that further, let's even assume that you're correct that they couldn't get that relief consistent with any set of the doctrines you're relying on. I'm still asking about what allows you to keep any excess equity that is seized that is in excess of the tax liability and not provide a means of remitting that to the homeowner. And corollary to that, whether you can or you can't, what procedural obstacle would there be to such a challenge, even if in the end you would win it? So, Your Honor, I would say because the city seizes title and then transfers it to a third party, unlike in Colvin and Freed, where there was a sort of a discreet request for a surplus. Here, the city would effectively have to change its method of collection and its method of administration to one where the city instead liquidated the properties or found $66 million from somewhere else. And so, maybe you would, excuse me, maybe you would, but then why, the reason you would is because you're stealing their money. If you continue to take the excess value, aren't you? Well, Your Honor, because I don't want to get into the merits of a claim that we feel is jurisdictionally barred, but the claim for the excess value has already been to the Supreme Court in Nelson, which held that because the administrative code has a way for property owners to file an answer asserting that there's substantial equity in their property and demand additional time in order to sell their property and retain any surplus value, that suffices to make this not a taking without just compensation. So, even if this claim wasn't jurisdictionally barred, it's meritless. But again, it's a claim that could be brought in state court, but here, because it's still wound up with the method of collection, it's really not something that can be pulled apart. It would require the city to change what it does when it forecloses on a property, and that goes to the heart of these doctrines, to the doctrine of comity, which says that, which is broader than the TIA and says that... Maybe you can help me. I guess I'm just having some difficulty understanding how comity would reach that far. I mean, if the plaintiffs, if we assume they're not at all contesting their tax liability, and they're making allegations of fundamental constitutional rights violations, and the tax liability is not a relevant factor to those claims, and I guess I'm not saying that the tax liability is directly implicated by the excess value claim or the right to be free from racial discrimination or the due process claim. It would seem to me comity would basically reach anything in any way connected to tax if it reaches this. So what am I missing? Your Honor, I think in McNary, for example, the Supreme Court said even the maintenance of a damages suit can interfere with the state administration of taxes because it requires a determination that this tax scheme is unlawful, and state tax officials can be summoned into federal court, and federal court effectively becomes a source of appellate review of the local tax scheme. Analysis applies here, where first of all, because of the way that the city deals with these properties, there isn't a tax sale, there isn't a discrete amount of money sitting around, and so the challenge would require and the relief thought would require the city to its entire tax scheme and effectively would force the city to jettison the TPP program. I mean, that goes to the heart of what both the TIA and comity are supposed to prevent. Why is the TPP program somehow automatically insulated because it's connected to the collection of tax? To the extent that the city chooses, after collecting the tax, after foreclosing on the property, to just give it away to a third party rather than to give back the excess value to the taxpayer, that's what the plaintiffs are challenging in this case, or at the fact that it may make it harder for you to collect taxes if you're precluded from doing something that has nothing actually to do with the collection of taxes but has to do with what happens after you've foreclosed on someone's property. You know, maybe as you say, that's meritless, but again, we're not talking about the merits, we're talking about we have to understand what the claim is on the merits, but once we understand what it is, the issue before us is whether they're allowed to bring a challenge to that. So again, your honor, in this case, the fact is that the demand for a surplus value would require the city to change the entirety of its tax scheme, and I think... No, no, no, it wouldn't change the entirety of the tax scheme. It may change the entirety of this scheme, but if the nature of the scheme is to effect a taking of private property that is in excess of taxes, that seems to me to be problematic for reasons, or not, if it's okay, but it's either way, it's entirely different whether you can challenge that to challenging anything about the city's right to impose a tax, to calculate a tax, and even to execute on property in furtherance of the tax. If you then decide to affix to that set of tax collection procedures something else that, for the sake of the argument, is an unconstitutional taking, why does the fact that you're doing that as part of something that you think is an efficient way of collecting taxes somehow turn this into a tax scheme? They're not challenging the tax. Well, again, your honor, as I mentioned earlier, I think that that's not accurate, but to the extent that we're only talking about surplus value, I think the answer is that, you know, the third party transfer program came about as a result of a legislative judgment that other methods of tax collection were unworkable, and so to try to separate out here, and this is not to say, of course, that a taking scheme couldn't be brought in state court, but to try here to invade the city's method of tax collection here. Thank you, Ms. West. We'll hear from Mr. Markowitz. Thank you, your honor. May it please the court. As the court is aware, the Broker-Feldman Doctrine contains four factors that must be satisfied, and contrary to the appellant's contentions, all four of these factors are satisfied in this case. First, the appellants have clearly lost state court. As this court has previously held in Wilson, the fact that the in-rem judgment was held on default is of no import. The plaintiff does not need to participate in the lower court proceedings to be considered a state court loser. Mr. Markowitz, do they have, Mr. Markowitz, excuse me, do they have to have notice of the proceeding to be a state court loser? Your honor, the appellants in this case have all received notice of their talents. The notice requirements that the city has used in this case has been upheld numerous times, both by this court as well as most recently, just a few weeks ago, by the appellant division in the state court in the first department, which just recently held that in upholding four separate decisions by the Bronx Supreme Court that the notice requirements here were constitutional. So the city's notice requirements have been upheld. They've been tested numerous times, both in this court, both in ISCA Enterprises, the New York Court of Appeals has upheld it, U.S. Supreme Court in Nelson has upheld it, and the exact same notice requirement was even upheld by the second department as far back as 1988. So that may be right, and that may be a problem on the merits again, but going back to Rooker Feldman, if the plaintiffs are arguing that the city committed misconduct and not providing adequate notice, isn't there an argument that essentially alluding to a line of cases in which we say an adversary in the context of a litigation committed misconduct, and we may need to reference the state court judgment in order to measure the damages, but it doesn't require us to review and reject the state court judgment. So I'm having a little difficulty seeing why the compensatory damages claim, the due process claim is barred by Rooker Feldman. The claims are all barred by Rooker Feldman because they were all necessarily all stemmed from that original judgment. This was all challengeable in the state court underneath. What the plaintiffs are doing now, what the appellants are doing now is trying to re-couch their claims to try to get around the Rooker Feldman judgment, but that's, you know, as this said in Farr v. Evergreen, that's not permissible, okay? You can't just present new legal arguments to try to get around the original state court judgment. Underlying this entire case is the fact that what they are challenging is the state court interim judgment that, you know, that's at issue here. They're not, all their claims were all wrapped up and all revolved and all concerned and all connected with that underlying judgment. There's no... No, excuse me, Mr. Markowitz, as you went on escalating the verbs you were using there, we moved away from all of these harms are caused by the state court judgment to all of their claims are somehow connected to the state court judgment, which is something quite different. Assume for the challenge the foreclosure and we say that part of their claim is barred by Rooker Feldman. Let's just assume that. What about the part that challenges what the city does? There are two pieces. One, what the city does after the foreclosure with the property, namely give it to your clients and not give back some part of the excess value. And two, what is challenged also is what the city did before the foreclosure, which was according to the plaintiffs and these claims may or may not be valid on the merits to engage in selective prosecution in effect in how they Rooker Feldman. I don't believe that the court will dismiss the claims pursuant to Rooker Feldman of those claims that would happen post-judgment. I don't believe those were necessarily dismissed. But again, what you're talking about is that the judgment itself indicated and directed that the transfer happened. So the transfer itself was pursuant to the judges. Therefore, everything was caused by the judgment. It all flows naturally from that judgment. With respect to the pre-trial, I believe that was also again mostly in the underlying court motion. I apologize. In the lower court motion, I believe that was all pursuant to the judgment. Again, these were all issues that came out of the judgment itself. These were all stuff that could have been challenged back in the Supreme Court proceedings, were never challenged in the Supreme Court proceedings. And again, this court has already upheld this exact doctrine of Rooker Feldman in this exact type of case in Riley. So with respect to Brooklyn 51, this court has already said that Rooker Feldman applies to these in-ran tax foreclosure cases. So therefore, that whole line of argument from the plaintiffs is not applicable here. This court has already held where Rooker Feldman applies to these types of cases. And they cannot circumvent that. They're just trying to couch their claims in civil rights violations. So just to make sure, Mr. Markowitz, that I understand what you're saying, you're saying that you start out by saying the district court did not dismiss the claims with respect to surplus value on the basis of Rooker Feldman. But then I think you're saying, but the district court should have, because that harm also, in your view, flows from a provision in the underlying judgment. Do I have that clear? No, I'm not clear 100% if the district court dismissed those claims pursuant to Rooker Feldman. I don't recall them doing it, but they may have. And if I misspoke on that, I do apologize. But the point of the matter is, as this court has already said in Riley, that these claims are barred by Rooker Feldman. The precedent in this court has already been set that Rooker Feldman applies to these claims. So regardless of how the plaintiffs couch their claims in the district court, these claims should have been and were properly dismissed pursuant to Rooker Feldman. Thank you, Mr. Markowitz. We'll hear rebuttal. Thank you, Your Honor. I'd like to start by clarifying to the extent that there's any confusion. Our claims are only for the surplus value after the taxes have been received by the city. We are not seeking to set aside all of the TPP program. We are seeking to set aside its unconstitutional application to extinguish the lifetime of savings that has been built up in real property equity by the plaintiffs. And I also want to... And the claim, just to make sure I'm understanding correct, and the claim that there was a failure to provide just compensation, the district court did not find that claim to be barred by Rooker Feldman. It was only the TIA or the comedy that barred that claim. Am I correct about that? That's how I understand it as well, Your Honor. I certainly think it would not apply, Rooker Feldman would not apply. And I also think that Rooker Feldman does not apply to claims, as Your Honor suggested, as in Boss Springs, that may need to reference the state judgment, but are not seeking to set the judgment aside. We are not... And Riley, I just want to point out, as to Riley, it was a non-precedential pro se case in which the plaintiff specifically requested to set aside forfeiture after having participated in the state court proceedings. It could hardly be further from the facts of this case. Just also to underscore, we are not interfering with the collection of the taxes. The city has and uses a tax lien sale process that does give the surplus value back to the homeowner. And as Justice Patnow pointed out, and this is A272 of the appendix, or they can continue to use the TPT program as long as they pay the surplus value back to the homeowners. The city's defense that somehow because it's easier for them to violate plaintiff's constitutional rights, that that means plaintiffs can't challenge it, is hard for me to comprehend. And I think it's useful to kind of think about an example of somebody who had a $100 bill that the city tried to execute upon for a $5 debt. And the city's saying, but they get to keep the $95, whereas if the party had had $25 bills, they would have only got to keep the five. That simply does not make sense. And there is certainly no Supreme Court precedent or decision of this court that compels that. I think that just last point would be that the city said at least twice in their presentation that this claim for taking could be brought in state court. And that is at best an empty offer because we know that such claims have been consistently rejected in state court. The only claims that have been permitted by Judge Partnow, whose decision is being appealed by the city, which is arguing that once the four-month redemption period has expired, there can be no further challenge to be made in state court. And to the extent that they're arguing that taking claims have to be exhausted first in state court, again, Nick explicitly overrules that. So unless there are further questions, we would rest. Thank you. We'll take the matter under the advisement, nicely argued by everyone, and we'll take it under submission. The next... Thank you.